# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| ULTIMATE ESCAPES HOLDINGS, LLC, et al.,[1] | Case No. 10-_____ ( ) |
| Debtors. | (Joint Administration Requested) |
| ULTIMATE ESCAPES HOLDINGS, LLC., et al., | Adversary No. _____ |
| Plaintiffs, v. | |
| CLUB HOLDINGS, LLC, | |
| Defendant. | |

## VERIFIED ADVERSARY COMPLAINT TO AVOID FRAUDULENT AND PREFERENTIAL TRANSFERS AND FOR DECLARATORY AND INJUNCTIVE RELIEF

### NATURE OF THE ACTION

1. The above-captioned Plaintiffs, debtors, and debtors-in-possession (collectively, the "Debtors" or "Ultimate Escapes"), seek by this adversary complaint (a) entry of an order enjoining one of its competitors, the Defendant, Club Holdings, LLC ("Club Holdings"), from using the Debtors' confidential and proprietary membership lists and related information and from soliciting the Debtors' members, (b) a declaration that pursuant to 11 U.S.C. § 362(a)(3), the automatic stay bars Club Holdings' conduct in this regard, and (c) to avoid as fraudulent and preferential conveyances the transfer of valuable property by the Debtors in connection that certain Agreement, dated August 6, 2010, between Ultimate Escapes Holdings, LLC and Club

---

[1] A list of the Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, is attached hereto as Schedule "1".

Holdings, without having received reasonably equivalent value in exchange and at a time when Ultimate Escapes was insolvent or became insolvent as result of the transfer.

## JURISDICTION AND VENUE

2. This Court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. §157(b)(1), 28 U.S.C. §§ 1334(b) and (e)(1) and 28 U.S.C. § 2201 et seq. This adversary proceeding is a core proceeding pursuant to 28 U.S.C. §§ 157(b)(2).

3. Venue for this adversary proceeding is proper pursuant to 28 U.S.C. § 1409 because this adversary proceeding arises under the Bankruptcy Code, involves property of Ultimate Escapes' estates, and arises in and is related to Ultimate Escapes' Chapter 11 case, which is pending in this district.

4. This proceeding is brought in accordance with Rules 7001(7), 7001(9) and 7065 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") and §§ 362(a)(3) and 105 of Chapter 11 of the Bankruptcy Code.

## PARTIES

5. Ultimate Escapes Holdings, LLC is a corporation organized under the laws of the State of Delaware, with its principal place of business in the State of Florida. On September 20, 2010, Ultimate Escapes Holdings, LLC and its Debtor affiliates filed voluntary petitions for relief under Chapter 11 of the Bankruptcy Code.

6. Club Holdings, LLC is a corporation organized under the laws of, and with its principal place of business in, the State of Colorado.

## GENERAL ALLEGATIONS

### A. Ultimate Escapes' Business.[2]

7. Ultimate Escapes and its affiliates began operations in 2004. Ultimate Escapes is a luxury destination club providing individuals, families, and corporate members with flexible access to a portfolio of multi-million-dollar vacation residences in resort and metropolitan locations throughout the U.S., the Caribbean, Mexico and Europe. Destination clubs are designed to offer their members an attractive alternative to vacation home ownership and timeshare purchases. In addition to providing club members with flexible access to a portfolio of 119 luxury club residences in 45 global destinations, club members are offered access to hotel properties and world-class resorts, pre-trip planning advice, and on-site concierge services. With multiple club offerings and various club membership levels, the Debtors have wide market appeal in the destination club industry.

8. Through a variety of club memberships, including, *Elite Club*™, *Signature Club*™, and *Premiere Club*™, the Debtors offer approximately 1,247 club members with exclusive access to their family of luxury properties.

### B. Ultimate Escapes' Member Information.

9. The member lists and other identifying information regarding the Debtors' members (collectively "Member Information") are important and valuable assets of the Debtors' estates. It has been the practice of the Debtors to maintain this Member Information in strict

---

[2] A more detailed description of the Debtors' business and affairs can be found in the Declaration of Philip Callaghan in Support of the Debtors' Chapter 11 Petitions and Requests for First Day Relief (the "First Day Declaration"), filed contemporaneously herewith and incorporated herein by reference, and the Declaration Of Sheon Karol In Connection With The Debtors' Motion Requesting Entry Of Order (A) Approving Asset Purchase Agreement And Authorizing The Sale Of Substantially All Of The Debtors' Assets Outside The Ordinary Course Of Business; (B) Authorizing The Sale Of Assets Free And Clear Of All Liens, Claims, Interests And Encumbrances; And (C) Granting Related Relief (the "Sale Declaration"), also filed contemporaneously herewith and incorporated herein by reference.

confidence and not to publish or disclose the information to third parties. This information constitutes highly-sensitive commercial and proprietary information which, if made publicly available, could be used by the Debtors' competitors to their advantage and to the detriment of the Debtors' businesses. The Member Information also serves as part of the collateral for the Debtors' secured loan obligations involving CapitalSource.

C. **Club Holdings' Business.**

10. Club Holdings is a direct competitor of Ultimate Escapes in the destination club industry. Through affiliates such as Quintess, *The Leading Residences of the World*™, Club Holdings advertises that it provides its members with access to multimillion-dollar residences and experiences in multiple international resort and city destinations.

D. **The March 1, 2010 Agreement.**

11. On March 1, 2010, Ultimate Escapes Holdings, LLC and Club Holdings entered into a letter agreement ███████████████████████████████████ ███████████████████ (the "<u>Mutual Confidentiality Agreement</u>"). A copy of the Mutual Confidentiality Agreement is appended hereto as *Exhibit A*.

12. The parties acknowledged in the Mutual Confidentiality Agreement that each party ███████████████████████████████████████ ███████████████████



4

▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆

*Id.*, at p. 1 (emphasis supplied).

13. Pursuant to the Mutual Confidentiality Agreement, Ultimate Escapes and Club Holdings expressly agreed to treat Confidential Information in the manner provided for in the Mutual Confidentiality Agreement. *Id.*, at ¶ 1.

14. Pursuant to Paragraph 2(a) of the Mutual Confidentiality Agreement:

> the Confidential Information will be kept confidential by the Recipient and its Representatives and will not, without the prior written consent of the Owner, be disclosed, in whole or in part, to any third party by the Recipient or any of its Representatives in any manner whatsoever, *and will not be used by the Recipient or any of its Representatives, directly or indirectly, for any purpose other than in connection with the Recipient's evaluation of a possible Transaction.*

*Id.* (emphasis supplied).

E. **The Confidential** ▆▆▆▆▆▆▆▆▆▆

15. On April 30, 2010, Ultimate Escapes Holdings, LLC and Club Holding entered into ▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆ A copy of the ▆▆ is appended hereto as *Exhibit B*.

16. ▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆

17. ▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆

18. ▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆

■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■
■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■
■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■
■■■■■■■■■■

19. ■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■

■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■

**F.     The August 6, 2010 Agreement.**

20.     On August 6, 2010, Ultimate Escapes Holdings, LLC and Club Holdings entered into an Agreement (the "<u>Agreement</u>") that provided, in part, ■■■■■■■■■■■■■■■
■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■
■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■
■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■
■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■ A copy of the Agreement is appended hereto as *Exhibit C*.

21.     ■■■■■■■■■■■■■■■■■■■■■■■■■■■■■
■■■■■■■■■■■■■■■■■■■■■■■■■

22.     ■■■■■■■■■■■■■■■■■■■■■■■■■
■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■
■■■■■■■■■■

(a)     ■■■■■■■■■■■■■■■■■■■■■■■■

(b)     ■■■■■■■■■■■■■■■■■■■■■■■■

(c)     ■■■■■■■■■■■■■■■■■■■■■■■■

23. ███████████████████████████████████
███████████████████████████████

(a) ███████████████████████████████
███████████████████████

(b) ███████████████████████████████
███████████████████████

(c) ███████████████████████████████
███████████████████████████
███

24. ███████████████████████
███████████████████████████████
███████████████████████████████
███████████████████████████████
███████████████████████████████
███

25. In connection with the Agreement, Ultimate Escapes did not receive reasonably equivalent value in exchange for its transfers thereunder, including those property transfers related to the Member Arrangements.

26. At the time Ultimate Escapes entered into the Agreement, it was insolvent or became insolvent as a result of the transfers made under the Agreement.

### G. Club Holdings' Use of Ultimate Escapes' Member Information Improperly to Solicit Ultimate Escapes' Members.

27. ████████████████████████████████████████
████████████████████████████████████████████
████████████████████████████████

28. Without the consent of or coordination with Ultimate Escapes, Club Holdings has used Member Information to solicit Ultimate Escapes' members as Club Holdings' members.

29. Specifically, on information and belief, Club Holdings has solicited approximately 200 Ultimate Escapes' members to be Club Holdings members by sending them direct communications, including email communications, which state in part:

> I am reaching out to you on behalf of Club Holdings, LLC, the parent company of Quintess, to offer you a very time-sensitive opportunity to enjoy club membership, as well as to be have the opportunity for a membership deposit refund. If you prefer, you can dive right into the details of the offer by logging into quintess.com (www.quintess.com/opm/deal_summary) with the unique login and password we created for you:
>
> Username: [xxxxxx]
> Password:[xxxx]
>
> In addition to the offer details, you can review an in-depth FAQ and learn about scheduled conference calls for Ultimate Escapes (UE) members.

A copy of an email directed by Club Holdings to Ultimate Escapes members is appended hereto as *Exhibit D*.

30. The Quintess.com link referenced in the Club Holdings' email solicitation provides each Ultimate Escapes' member with "a summary of your personal offer from Club Holdings, based on what we understand your current membership is with Ultimate Escapes," and allows members to review and print Club Holdings' membership agreements in order to consummate the membership relationship with Club Holdings. A copy of a representative screen

shot of the Quintess.com webpage devoted to this Club Holdings' solicitation process is appended hereto as *Exhibit E*.

**H. Ultimate Escapes Has Elected to Reject the Agreement.**

31. Ultimate Escapes has filed contemporaneously herewith a Motion for Entry of An Order Authorizing the Debtors to Reject Certain Executory Contracts and Expired Leases and Granting Related Relief (the "Rejection Motion").

32. As a result of the decision to file for bankruptcy, certain agreements have become unduly burdensome to the Debtors' estates.

33. Among the contracts that Ultimate Escapes has elected to reject is the Agreement, which is listed on Exhibit A of the Rejection Motion.

**I. Club Holdings Has Refused Ultimate Escapes' Demand that it Cease and Desist from Using the Member Information and Soliciting Ultimate Escapes' Members.**

34. On September 16, 2010, Ultimate Escapes, by their counsel, sent a letter to the President of Club Holdings and its General Counsel requesting that Club Holdings cease and desist from using Member Information and soliciting Ultimate Escapes' members. A copy of the letter is appended hereto as *Exhibit F*.

35. On September 17, 2010, Ultimate Escapes, by its General Counsel, responded to the Debtors' cease and desist letter and represented, in substance, that it would not cease in its offending conduct. A copy of the response is appended hereto as *Exhibit G*.

<u>CAUSES OF ACTION</u>

**Count I – Avoidance and Recovery of Constructive Fraudulent Transfer Pursuant To 11 U.S.C. §§ 548(a)(1)(B) and 544**

36. Ultimate Escapes repeats and realleges the allegations contained in Paragraphs 1 through 35 above as if fully set forth herein.

37. In connection with the Agreement, Ultimate Escapes transferred valuable property of the estates within one year of the petition date.

38. Ultimate Escapes did not receive reasonably equivalent value or fair consideration in exchange for its transfers made in connection with the Agreement, including transfers of certain valuable rights with respect to its members.

39. Ultimate Escapes was insolvent at the time of the conveyance or rendered insolvent as a result of thereof.

40. Accordingly, the transfers made by Ultimate Escapes in connection with the Agreement may be avoided.

### Count II – Avoidance and Recovery of Preferential Transfer Pursuant To 11 U.S.C. § 547

41. Ultimate Escapes repeats and realleges the allegations contained in Paragraphs 1 through 40 above as if fully set forth herein.

42. In connection with the Agreement, Ultimate Escapes transferred valuable property of the estates within 90 days preceding the petition date.

43. The transfers were to or for the benefit of the Defendant.

44. The transfers were made for or on account of an antecedent debt or debts owed by Ultimate Escapes to the Defendant.

45. The transfers were made while Ultimate Escapes was insolvent or they became solvent as result.

46. The transfers enabled the Defendant to receive more than it would have received if this case were a case under chapter 7 of the Bankruptcy Code, if the transfers had not been made, and if the Defendant received payment on the subject antecedent debt(s) in accordance with applicable provisions of the Bankruptcy Code.

47. Accordingly, the transfers made by Ultimate Escapes in connection with the Agreement may be avoided.

### Count III - Declaratory Relief Pursuant to 11 U.S.C. § 362(a)(3)

48. Ultimate Escapes repeats and realleges the allegations contained in Paragraphs 1 through 47 above as if fully set forth herein..

49. Section 362(a) of the Bankruptcy Code operates as an automatic stay against "any act to obtain possession of the property of the estate or of property from the estate or to exercise control over property of the estate." 11 U.S.C. § 362(a)(3).

50. Club Holdings' use and misappropriation of the Member Information and related solicitation of Ultimate Escapes' members is stayed pursuant to the automatic stay provisions of section 362(a) of the Bankruptcy Code because the Member Information is property of the Debtors' estates.

51. Continued use and misappropriation of the Member Information and related solicitation of Ultimate Escapes' members by Club Holdings constitutes a violation of the automatic stay.

### Count IV - Extension of the Automatic Stay Pursuant to 11 U.S.C. §§ 105(a) and 362(a)

52. Ultimate Escapes repeats and realleges the allegations contained in Paragraphs 1 through 51 above as if fully set forth herein.

53. Section 105(a) of the Bankruptcy Code authorizes the Court to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of [the Bankruptcy Code]." 11 U.S.C. § 105(a).

54. Pursuant to section 105(a) of the Bankruptcy Code, this Court may enjoin actions by non-debtor third parties where necessary to prevent an adverse impact upon the Debtors' estate or to assure the orderly administration of the Debtors' chapter 11 case.

55. The extension of the automatic stay provisions of § 362(a)(3) of the Bankruptcy Code to Club Holdings' use and misappropriation of the Member Information and related solicitation of Ultimate Escapes' members is appropriate because such conduct will cause irreparable harm to the Debtors' estate to the detriment of the Debtors' creditors.

56. The extension of the automatic stay provisions of § 362(a)(3) of the Bankruptcy Code to Club Holdings' conduct pursuant to § 105(a) of the Bankruptcy Code, is necessary and appropriate to protect the Debtors' ability to administer its estate and maximize the value that can be obtained from the disposition of the Debtors' assets and to carry out the provisions of the Bankruptcy Code.

**Count V - Request for Temporary, Preliminary and Permanent Injunctive Relief Pursuant to 11 U.S.C. §§ 105 and 362(a)(3) and Bankruptcy Rule 7065**

57. Ultimate Escapes repeats and realleges the allegations contained in Paragraphs 1 through 56 above as if fully set forth herein.

58. Unless Club Holdings is enjoined from using and misappropriating the Member Information and soliciting Ultimate Escapes' members, the Debtors will suffer irreparable harm to the detriment of all of the Debtors' creditors.

59. Club Holdings will suffer no irreparable harm by the entry of an injunction enjoining it from using and misappropriating of the Member Information and soliciting Ultimate Escapes' members.

60. Under the circumstances, the likelihood of irreparable harm to the Debtors and their creditors in the absence of injunctive relief far outweighs any harm to Club Holdings.

61. Ultimate Escapes is likely to prevail on the merits of its Adversary Complaint because Club Holdings is bound under the Mutual Confidentiality, ▓▓▓ and the Agreement to maintain the confidentiality of the Member Information and not to use it to solicit Ultimate Escapes' members. While Club Holdings' may assert that under the Agreement, they have rights to use Member Information in the manner that they have, the Debtors dispute that assertion. Moreover, the Agreement is among the agreements that the Debtors have elected to reject pursuant to the Rejection Motion, so there is no basis up which Club Holdings' conduct can be justified.

62. The public interest favors granting the injunction.

63. The Debtor's lack an adequate remedy at law. Thus, an injunction enjoining the use and misappropriation of the Member Information and solicitation of Ultimate Escapes' members is necessary, appropriate, and essential to the orderly and effective administration of the Debtors' estates.

WHEREFORE, the Debtors respectfully request that the Court:

1. Declare that the use by Club Holdings and its affiliates, officers, directors, employees, advisors, counsel, representatives and agents of Member Information, and solicitation of the Debtors' members violates the automatic stay imposed by section 362(a)(3) of the Bankruptcy Code;

2. Enter an order enjoining Club Holdings and its affiliates, officers, directors, employees, advisors, counsel, representatives and agents, from using Member Information and solicitation of the Debtors' members;

3. Order Club Holdings and its affiliates, officers, directors, employees, advisors, counsel, representatives and agents, to immediately return the Member Information and destroy

all copies of such information;

4. Enter judgment for the Debtors on their claims for fraudulent and preferential transfers in connection with the Agreement; and

5. Award the Debtors such other and further relief that the Court deems just and proper.

Dated: September 20, 2010

GREENBERG TRAURIG, LLP

Scott D. Cousins (DE Bar No 3079)
Matthew L. Hinker (DE Bar No 5348)
The Nemours Building
1007 North Orange Street, Suite 1200
Wilmington, Delaware 19801
Telephone: (302) 661-7000
Facsimile: (302) 661-7360
Email: cousinss@gtlaw.com
       hinkerm@gtlaw.com

-and-

Nancy A. Mitchell
200 Park Avenue
New York, New York 10166
Telephone: (212) 801-9200
Facsimile: (212) 801-6400
Email: mitchelln@gtlaw.com

Proposed Counsel for the Debtors
  and Debtors-in-Possession